# Exhibit A

Deutsche Bank

## THE MULTI MARKET CUSTODY AGREEMENT

**This Agreement** is made on the **7** day of **March 2014** between

    (A)    The specific entity or entities of Deutsche Bank Group as stated in **Schedule I** of this Agreement (each relevant branch shall be known as "**Branch**", each relevant subsidiary shall be known as "Subsidiary", and collectively shall be known as "Bank"); and

    (B)    **Madison Asset LLC** of 122 Mary Street 5th Floor, Zephyr House Grand Cayman KY1-1109(the "**Client**").

1.    Definitions and Interpretation

1.1    "**Agreement**" means this Agreement and any schedule/supplement applicable from time to time;

    "**Authorised Person(s)**" means any party (including a person or a corporate) which has been authorised in a manner acceptable to the Bank to act on the Client's behalf in the performance of any act, discretion or duty under this Agreement;

    "**Cash**" means any cash in any currency held by the Bank under this Agreement;

    "**Deutsche Bank Group**" means Deutsche Bank AG and its branches and majority-owned subsidiaries;

    "**Securities**" may include bonds, shares, units of mutual funds, futures, foreign exchange contracts, or other securities/instruments, or rights or entitlements with respect thereto, and rights or property which may at any time accrue or be offered (by way of redemption, dividends, conversion, option or otherwise) in respect of any of the foregoing, and any certificates, options or other instruments (in registered or unregistered form) representing rights to receive, purchase or subscribe for any of the foregoing or representing any other rights or interests therein (including where constituted by an entry in the records of the issuer/depository) held by the Bank under this Agreement.

1.2    This Agreement may be entered into on a single or multi-branch/subsidiary basis, and if the latter, it will be so entered into for administrative convenience (so as to avert the necessity of having a separate agreement for each Branch/Subsidiary) and this Agreement shall be deemed to be an agreement between the Client and each Branch/Subsidiary listed on Schedule I attached hereto for the performance of services hereunder in the location of such Branch/Subsidiary set forth in said Schedule I as fully as if such Branch/Subsidiary had entered into a separate and distinct contractual relationship and agreement with the Client.  Accordingly, any reference to "Bank" shall refer to the particular Branch/Subsidiary that in its location holding the relevant Securities/Cash and performing the services hereinafter described with respect to the foregoing.

2.    Appointment of Custodian
    The Client authorises the Bank to establish on the terms of this Agreement, with the Bank in each location stated in Schedule I and/or in such name(s) and manner as may be required by the Client, custody account(s) (the "**Custody Account**") for the deposit of any Securities, and cash account(s) (the "**Cash Account**") for the deposit of Cash.

1

DB 000028

Deutsche Bank

3.      Representations and Warranties

Each party hereby represents and warrants to the other that:-

(i)      it has and will continue to have full capacity and authority to sign and enter into this Agreement and to carry out the transactions contemplated herein, and has taken and will continue to take all action (including the obtaining of all necessary corporate approvals and governmental consents) to authorise the execution, delivery and performance of this Agreement;

(ii)      the terms of this Agreement do not constitute a breach of any obligations by which it is bound whether arising by its constitutional documents, any contract or operation of law; and

(iii)      the obligations in this Agreement constitutes its legal, valid and binding obligations and are enforceable against it.

Each party agrees to execute/deliver such documents and perform such further acts as the other party may reasonably require in relation to this Agreement.

4.      Transactions Not Requiring Instructions

In the absence of contrary instructions and so long as the Bank is prepared to provide the services, the Bank is authorised by the Client to carry out administrative acts and/or the following transactions at the Bank's discretion relating to the Securities and/or Cash without requiring further instructions from the Client:-

(i)      to complete and sign any affidavits, certificates of ownership or other certificates relating to the Securities and/or Cash in connection with the Bank's duties under this Agreement which may be required by the tax or any other regulatory authority;

(ii)      to collect and receive, for the account of the Client, all income and other payments and distributions in respect of the Securities and/or Cash, and credit the same to the relevant account;

(iii)      to receive and hold for the account of the Client any capital arising out of or in connection with the Securities and/or Cash whether as a result of its being called or redeemed or otherwise becoming payable and credit the same to the relevant account;

(iv)      to receive and hold for the account of the Client all Securities received by the Bank as a result of a stock dividend, share sub-division or reorganisation, capitalisation of reserves or otherwise;

(v)      to exchange interim or temporary receipts for definitive certificates, and old or overstamped certificates for new certificates;

(vi)      to make cash disbursements or payments for any fees, taxes, duties, levies, expenses and/or any payments incurred in connection with the Bank's duties under this Agreement; and

(vii)      to do all such acts as the Bank may consider to be necessary or desirable for the above or in order to perform its duties under this Agreement (including to do any currency conversion at the prevailing rate as reasonably determined by the Bank where any payment is received or to be made in a different currency).

2

Deutsche Bank

5.     Transactions Requiring Instructions

Without prejudice to the authority given to the Bank above, the Bank is authorised to carry out any transactions whatsoever relating to the Securities and/or Cash upon receipt of specific instructions, including instructions to deliver or deal with the Securities (for example pursuant to any sale), or to make payment for and/or receive Securities purchased by the Client.

6.     Notice of Rights Issues, General Meetings and Other Matters

The Bank will inform the Client of notices that it has actually received in respect of any bonus issues, rights issues, payment calls, takeover bids or general meetings of the issuers/companies in relation to the Securities. The Client shall give the Bank instructions on a timely basis so that the Bank will have sufficient time to comply with the same. If the Bank does not receive any timely instructions from the Client, the Bank is authorised at its discretion to take or omit to take any action without any liability as it may deem advisable or expedient to be in the interest of the Client.

Corporate action notice/offer documents may contain restriction or exclusion clauses. The Client shall be responsible to review such clauses/notices/documents, and the Bank does not                    represent that the Client and/or its customers are eligible for the offer or that any instruction electing to participate will be acted upon/accepted by the issuer/its agents. The Bank is not responsible for the contents, sufficiency and/or accuracy of any corporate action document nor the result of any application thereunder. If the Client instructs the Bank to act in relation to any corporate action, the Bank is entitled to rely upon the instruction and any information supplied thereto as the Client's confirmation that the same would not contravene any law, rule or restriction/exclusion clause related to the corporate action. The indemnity in favour of the Bank in this Agreement shall also cover any liability incurred due to the Bank's providing the information to the Client and/or acting on the Client's instruction thereunder.

7.     Segregation, Identification and Registration

7.1    To the extent feasible and/or in line with market practice/regulation, Securities which are deposited in a depository may be maintained with the depository in an account for the Bank's customers and the Bank warrants that it will not mingle its own assets with such Securities held for the Client.

7.2    Where Securities are physically held by the Bank, such Securities shall be physically segregated from the securities of the Bank or other clients of the Bank.

7.3    Provided always that the Securities and/or Cash whether held by the Bank or a depository shall be clearly identified in the Bank's records as being held for the Client and/or (if relevant) the Client's clients.

7.4    The Securities shall be registered and held as per the Client's instructions.

7.5    The Bank's records relating to the Securities and Cash and the Bank's premises where the Securities are kept shall be open to inspection/audit at reasonable times (subject to prior notice) by the auditors and representatives of the Client, provided that such inspection/audit is not in violation of any applicable laws.  Whenever reasonably required by the Client, the Bank shall furnish general audit reports on the Bank's operational and security control.

3

Deutsche Bank

8.      Overdrawn Amounts

The Bank may at its discretion (without being obliged to do so) extend credit, banking facility or financial accommodation to the Client for the purpose of meeting any payment or carrying out any instruction or for any purpose in connection with this Agreement (including facility for settlement of purchase or for advance of sale/redemption proceeds or coupon payment), in which event any liabilities owing pursuant thereto (i) shall be repayable by the Client on the Bank's demand (unless otherwise expressly agreed to by the Bank in writing) and (ii) shall bear interest and other charges at mutually agreed rate, but in the absence of such agreement, at the Bank's prevailing rate(s).

9.      Use of Third Parties, Clearance Systems and others

9.1     The Bank is authorised to use any party (including clearance systems, depositories, sub-custodians, outsourcing or overseas data processing agents and any member of the Deutsche Bank Group) in relation to any of the services/duties of the Bank under this Agreement and may delegate to any such party any of its services/duties under this Agreement, provided that the Bank shall use reasonable care to ensure that it uses only reputedly competent party. The Bank shall be responsible for the negligence or wilful misconduct of the following (but otherwise shall not have any responsibility):

(a)     a subcustodian which is a member of the Deutsche Bank Group and
(b)     a service contractor which performs secretarial or administrative services for the Bank at the Bank's premises.

9.2     Securities deposited with a sub-custodian, depository or clearing agency/entity shall be held subject to the rules and operating procedures of such party and any applicable laws and regulations whether of a governmental authority or otherwise;

9.3     The Client understands that the Bank may not be able to exercise discretion in the selection or monitoring of a depository/clearing system, or in the negotiation of contractual provisions with the same.

10.     Deutsche Bank Group Involvement

10.1    The Client hereby authorises the Bank, when acting on instructions from the Client, (i) to deal with or through any other member of the Deutsche Bank Group or  any other client of the Bank, and (ii) to earn and retain any commission, fee or profit in relation thereto. Provided that any dealing shall be on terms which are not less favourable to the Client compared to what would be reasonably obtainable at the same time by the Bank in comparable arms-length dealings with other similar non-Deutsche Bank Group entities.

10.2    The Client agrees and understands that the Bank may have banking relationships with or interests in companies whose Securities are held in the Custody Account or which are purchased or sold for the Custody Account.

4

DB 000031

**Deutsche Bank**

11     Scope of Responsibility

11.1   The Bank shall use reasonable care in the performance of its duties under this Agreement but shall not be responsible for any loss or damage suffered by the Client as a result of the Bank performing such duties or for any act or omission in respect of any instructions and/or under this Agreement unless the same results from negligence or wilful default on the part of the Bank, in which event the Bank's liability shall not exceed the market value of the relevant Securities and/or Cash at the time of (a) such negligence or wilful default or (b) the Client's discovery of the loss or damage (whichever is the higher). The Client shall promptly inform the Bank in writing of any loss or damage and shall take steps to mitigate such loss or damage.

11.2   Upon receipt of each transaction advice, statement of account or report supplied to it by the Bank, the Client shall examine the same and promptly notify the Bank of any error therein, failing which the entries therein shall be conclusively settled against the Client to be correct.

11.3   The Bank's sole responsibility with regard to the sale proceeds of the Securities is to receive
       payment whether by way of cheque, bank draft or any other form, of such proceeds from the
       purchaser (or its agent)    purchaser (or its agent), broker or any other party provided that the
       Bank shall not be liable to the Client in any way if such payment to the Bank is not honoured by
       the banker upon whom that  payment  is drawn or otherwise is not good, timely or valid
       payment. The Bank may make delivery of the Securities either contemporaneously with or
       before the receipt of such payment or purported payment in accordance with local settlement
       procedures.

11.4   All collections of the Securities and/or Cash and of any funds or other property paid or distributed in respect of the Securities and/or Cash are made at the risk of the Client and the Bank is entitled to make payment prior to delivery of Securities in accordance with local settlement procedures and shall not be responsible for the seller's (or its agent's), broker's or any other party's failure to make good, valid or timely delivery of any Securities and/or Cash nor for the genuineness, validity or title of any documents received in relation to the Securities and/or Cash.

11.5   The Bank does not have any responsibility for any loss/liability owing to any reason or cause beyond its reasonable control, including nationalisation, currency turmoil or restrictions, fire, acts of war, acts of God, acts of any authority whether de jure or de facto, requirements of/change in any laws or regulations, strikes or industrial action, acts of terrorism, failure of courier/delivery service, or acts or disruption of any relevant stock exchange, depository, clearing house, settlement system or market.

11.6   The Client shall be responsible for all filings, tax returns and reports on any transactions undertaken pursuant to this Agreement which must be made to any relevant authority , the payment of all unpaid calls, taxes, levies or duties due on any principal or interest, and/or any      other liability or payment arising out of or in connection with the Securities and/or Cash. Where a regulation requires the Bank to withhold any tax, the Bank may do so at the rate required by the regulation or (if in the Bank's opinion the regulation is not very clear on the rate) at such rate as the Bank may reasonably determine to be appropriate.

11.7   The Bank is not acting under this Agreement as investment manager or investment adviser to the Client, responsibility for the selection, acquisition and disposal of the Securities and/or Cash shall remain with the Client at all times, and the Bank does not have any obligation to supervise the issuer of the Securities.

5

DB 000032

Deutsche Bank

11.8    The Bank shall not be liable for any negligence, default, failure or delay of any depository, clearing system, securities registration body or securities registrar (or similar party) and any losses arising therefrom.

11.9    The Bank shall not be liable for any consequential or indirect loss.

11.10    Unless otherwise agreed to by the Bank, or stipulated in a separate agreement, or required by law/regulation, the Bank may in its sole discretion assist the Client in any tax matters, including any application for a reduction in rate or refund of tax. The Bank gives no assurance that such assistance will result in relief at source, any such reduction or refund of or other intended consequences, and may in its sole discretion without liability withdraw such assistance at any time .

11.11    The Bank is entitled at its discretion to reverse incorrect credit entries to any accounts (including where an entry was made in anticipation of receipt of funds/assets which receipt was however not fulfilled).

11.12    The Bank shall not have any duty to monitor the compliance by the Client or its customers/agents with any guideline or restriction imposed by the Client's constitutional documents or by any other document, law or regulation (including compliance with any investment restriction and any notification requirement relating to the Client's or its customers'/agents' beneficial ownership of securities).

11.13    The Bank may rely in good faith on the advice of legal counsel or other advisers.

11.14    The Bank shall not have any liability in connection with its reliance in good faith on records that were maintained for the Client by another party prior to the Bank's appointment hereunder.

11.15    Where the Bank is providing market values of securities, the Bank may obtain information on such values from outside sources which the Bank considers to be reliable and the Bank makes no warranty as to the reliability, accuracy or completeness of such information.

11.16    The laws and practices in different jurisdiction relating to custody, securities or settlement will vary, and neither the Bank nor any sub-custodian will assume any risk arising out of such laws and practices.

11.17    The Bank will effect such insurance coverage which it considers as adequate and in line with prevailing market practice and its internal policies. With regard to physical Securities, the insurance may cover the replacement of the documents/certificates, and not the value.

6

DB 000033

Deutsche Bank  ⧄

12    Instructions

12.1    The Bank is authorised to act on any instructions (including delivery of securities and cash) given or purportedly given by the Client or Authorised Person(s) by any of the following methods:

a)    in writing;

b)    by facsimile, S.W.I.F.T. or other electronic or teleprocess instruction system (including electronic/internet bank system or facility) acceptable to the Bank (whether tested or untested);

c)    any other methods agreed between the Client and the Bank.

The use of electronic/internet bank system or facility is subject to separate agreement to be signed.

12.2    The Bank may act and rely in the performance of its duties/services under this Agreement and without any liability on its part, upon any instructions or documents (or the signature thereon and including a facsimile) believed by it in good faith to be given by the Client or Authorised Person(s) or to be genuine, and provided the Bank is not guilty of negligence or wilful misconduct the Bank shall have no responsibility for any losses or liabilities whatsoever should such instructions or documents (or the signature thereon) turn out to be unauthorised, erroneous or fraudulent. In particular, the Bank shall not be responsible to ensure the authenticity, authority or validity of any facsimile or email communication/instruction. If facsimile or (at the Bank's absolute discretion) email instruction is required to be acted on, the Bank could require the Client to sign an appropriate facsimile/email indemnity form.

12.3    Instructions shall continue in full force and effect until cancelled or superseded.

12.4    If any instructions are in the Bank's opinion conflicting, unauthorized and/or ambiguous, the Bank shall inform the Client and may without any liability on its part refrain from executing such instructions until such conflict, authority or ambiguity has been resolved to its satisfaction.

12.5    Instructions, the handling of Securities/Cash and the provision of services hereunder shall be carried out subject to the rules, laws, operating procedures and market practice of any relevant stock exchange, clearing house, sub-custodian, agents, depository, settlement system, market or jurisdiction where/through which they are to be executed, and the Bank is entitled to execute any instructions in accordance with its normal market practice and operational procedures and insofar as it may consider practicable and reasonable. The Bank may further refuse to execute any instruction or accept any deposit if in the Bank's opinion it is contrary to any applicable law, rule or other regulatory requirement (including those arising from any governmental authority, self-regulatory organisation, stock exchange, clearing house, depository, settlement system or market) or the assets for deposit are not in good order.

7

CONFIDENTIAL                                                                                                 DB 000034

Deutsche Bank

12.6 The Bank may without any liability refuse to execute any instruction if in its opinion (a) there are reasonable grounds for believing that the instruction/liabilities arising from the execution of such instruction may not be adequately covered by the relevant Cash and/or Securities, (b) satisfactory arrangement for the settlement of any outstanding hereunder has not been made or (c) the instruction may be unauthorised or fraudulent.

12.7
The Bank shall be under no duty to assess the prudence or otherwise of any instructions or to give advice in relation thereto, and may act on the instructions irrespective of their prudence or otherwise.

13    Indemnity

The Client agrees to indemnify the Bank and to hold the Bank harmless against all charges, costs, damages, losses, claims, liabilities, expenses, fees and disbursements (together with any value added tax or similar tax imposed from time to time), which the Bank may suffer or incur howsoever in connection with or arising from this Agreement, **provided that** this Clause shall not be available to the Bank if the liabilities for which it is seeking indemnity hereunder arise from its own negligence or wilful misconduct.

The Client further agrees to indemnify the Bank and to hold the Bank harmless against any claims for income tax (including penalties) paid or payable by the Bank as agent of the Client (or of any person on whose behalf the Client is acting) under the tax laws of the jurisdiction in which the Branch/Subsidiary is located, notwithstanding that the Client has disputed such claims.

14.    Lien
A Branch/Subsidiary shall have a lien or security right on the Cash or Securities in relation to custody or administrative fees, charges and expenses, and any credit, banking facility, accommodation and/or advance granted to the Client by that Branch/Subsidiary, and that Branch/Subsidiary shall be entitled to convert and set-off any Cash and/or sell or otherwise dispose any Securities in settlement of the same.

15.    Fees and Expenses
The Client shall pay to the Bank from time to time (without any deduction) such fees/commission for its services pursuant to this Agreement as may be agreed in writing between the Bank and the Client, and the Bank's expenses, disbursements and costs incurred under this Agreement. If any applicable law requires a deduction to be made to any payment, the Client shall pay such further sum to the Bank so that the Bank would ultimately receive an amount equal to that it would have received, had no such deduction been made. The Client agrees to pay interest at the Bank's prevailing rate on any sum owed but not paid by the Client on the due date of payment.

16    Assignment

Neither party may assign or transfer all or any of its rights, benefits and obligations hereunder.

8

CONFIDENTIAL    DB 000035

Deutsche Bank

## 17  Disclosure

The Client hereby authorises the Bank to disclose information and/or transfer data regarding the Custody Account, the Cash Account and/or this Agreement if required to do so by:-

(i)        any applicable law, statute, regulation, government body or directive of or court order or similar process enforceable in any relevant jurisdiction, or any contractual document applicable to the Securities; or
(ii)        any offices, branches or subsidiaries of Deutsche Bank AG, agents or third parties (including data processors) provided it is on a need to know basis in connection with this Agreement.

## 18   Severability

If any provision hereunder becomes invalid, illegal or unenforceable under any law, the validity, legality and enforceability of the remaining provisions and this Agreement shall not be affected or impaired.

19.       Adverse Claims
Where the Bank is notified of any adverse claim or dispute in relation to any Securities and/or Cash, the Bank shall inform the Client of the same and shall be entitled to take whatever action reasonably deemed necessary by it in relation to such Securities and/or Cash.

## 20  Notices

Except as otherwise provided in this Agreement and subject to Clause 12, any notice, demand, letter or communication may be sent by the Bank to the Client by post, facsimile, S.W.I.F.T., electronic means or hand.

Any notice, demand, letter or communication to the Bank shall be sent to the Branch/Subsidiary to which the same relates and shall be effective only when received by the relevant Branch/Subsidiary.

Any notice, demand, letter or communication may be sent by one party to the other at the address and numbers set out in **Schedule II** or such address and numbers as one party may inform the other in writing.

## 21  Amendment
Any amendment of this Agreement is subject to consent in writing by both parties.

## 22  Own Account

22.1    The Client agrees to inform the Bank on the execution of this Agreement and from time to time whether it is acting on its own account or for the account of any third party (including the reasonable details of such third party).

22.2 The Client understands that local regulatory authorities may require the Bank to furnish information concerning the ultimate beneficiaries of any account. Upon the Bank forwarding any such regulatory authority's requirement to the Client, the Client undertakes to promptly furnish such information to the Bank or directly to the relevant regulatory authority in accordance with the local laws.

9

CONFIDENTIAL

Deutsche Bank

23  Power of Attorney

Where necessary, the Client shall execute such power of attorney in favour of the Bank in the form as required by the Bank and the Bank shall not be obliged to proceed with any instruction until it has received the duly executed/notarized (if necessary) power of attorney.

24. Contractual rights of third parties
This Agreement is for the sole benefit of the Bank and Client , and no right or benefit shall accrue to any other person.

25. Restriction on Advertisement etc
The Client shall not use or suffer/permit to be used the name, logo or any particulars of the Bank in any advertisement, document/brochure (save those which are solely for the Client's internal use), name card or other similar instrument (in whatever form), except with the prior written consent of the Bank.

26. Waiver of Sovereign Immunity
Each party agrees that this Agreement involves only civil activities and represents a commercial transaction, and hereby expressly waives the defense of sovereign immunity (or any similar defense in the relevant jurisdiction) to which it may be entitled.

27. Country Addendum and Service Level Memorandum
The provision of services in certain locations could be subject to separate country addendum, which shall form a part of this Agreement. If there is any conflict between a provision of this Agreement and a provision of a country addendum, the provision of the country addendum shall prevail. Service level and operational provisions may also be separately documented in a service level memorandum.

28  Termination

Either party hereto may terminate this Agreement or any Custody Account or Cash Account on giving not less than 60 days written notice to the other party (or one day notice where the recipient party has committed a material breach of any provision of this Agreement). Upon the expiry of such notice the Bank shall account to the Client in accordance with the terms of this Agreement.

Any termination shall not affect rights or liabilities existing on the date of termination nor any clause that is intended to survive such termination (including the indemnity provision). The Bank's right of indemnity shall continue to be effective in relation to any loss or claim that may arise after the termination date in relation to an event, obligation, liability or matter that may have accrued, incurred or existed prior to the termination date.

Where the Client failed to give timely transfer instruction to the Bank upon termination, the Bank shall hold any non-transferred assets at the Client's risk.

10

CONFIDENTIAL

DB 000037

Deutsche Bank

29. Governing Law/Place of Jurisdiction
As between the Client and a Branch/Subsidiary, this Agreement shall be governed by and
construed in accordance with the laws of the country, state or place of domicile in which such
Branch/Subsidiary is located and performs its obligations hereunder, and the Client and such
Branch/Subsidiary irrevocably submit to the non-exclusive jurisdiction of the courts of such
country, state or place of domicile.

30.  Version

Where this Agreement is translated into any other languages, the English version shall nonetheless prevail in the
event of any conflict between the English and non-English versions.

**IN WITNESS** the hands of the parties hereto the day and year first above written.

Signed for and on behalf of **Madison Asset LLC**

............................. ................................... Name: Roberto Cortes Rueda    Name:

Signed for and on behalf of Deutsche Bank AG for each Branch/Subsidiary*

..................................................... Name:    Name:

FLORIS VREEDENBURGH
DIRECTOR.

Scott HABURA
Vice PReSiDeNT

11